947 So.2d 675 (2007)
Mariela Abreus ARMAS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D05-4180.
District Court of Appeal of Florida, Second District.
February 2, 2007.
James Marion Moorman, Public Defender, and Sharon Morgan Vollrath, Special Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Marilyn Muir Beccue, Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
Mariela Abreus Armas challenges her judgment and sentence for the first-degree felony of criminal use of personal identification. § 817.568(2)(c), Fla. Stat. (2003). Ms. Armas pleaded nolo contendere in accordance with a plea agreement negotiated with the State. We find, however, that the record does not support a first-degree felony conviction under the 2003 statute as charged because a plain reading of the statute does not allow the State to aggregate the dollar amounts involved from multiple victims. Therefore, we reverse the judgment and sentence.

I. THE FACTS
On July 30, 2003, law enforcement apprehended Ms. Armas immediately after she attempted to cash a counterfeit check at a Collier County bank. The check was drawn on the account of a local building company and made payable to Linda M. Coutts for $5082.23. For identification, Ms. Armas presented what appeared to be a valid Florida driver's license issued in Linda M. Coutts' name but displaying Ms. Armas' photograph.
Using bank surveillance videotapes and thumbprint identification, investigators subsequently discovered that Ms. Armas *677 was part of a large counterfeit check-cashing ring. They connected her to fourteen illegal transactions that had occurred between June 2, 2003, and July 30, 2003. In each of these transactions, Ms. Armas presented a forged check payable to Linda M. Coutts and attempted to cash the check using the same fraudulent Florida driver's license. According to the record, the checks ranged in value from $2800 to $18,000. The checks were drawn on the bank accounts of eight individuals and four local business entities. According to the State, the amounts of the checks totaled $51,600. When confronted with evidence of the numerous illegal transactions, Ms. Armas admitted that she had knowingly used a fraudulent Florida driver's license as identification to cash checks that she knew were forged.

II. PROCEEDINGS IN THE LOWER COURT AND PLEA AGREEMENT
A. The Charges
The State originally charged Ms. Armas with twenty-four offenses, including scheme to defraud, grand theft, uttering a forged instrument, unlawful possession of a license, and fraudulent use of personal identification. The State amended the charging document twice, and the trial court dismissed six of the charges.[1] In the end, the State charged Ms. Armas with twenty-five felonies of varying degrees, all according to Florida Statutes (2003):
 Criminal use of personal identification information (one count)  $50,000 or more, section 817.568(2)(c), a first-degree felony.
 Scheme to defraud (one count)  aggregate value of $50,000 or more, section 817.034(4)(a)(1), a first-degree felony.
 Criminal use of personal identification information (eighteen counts)  less than $5000, section 817.568(2)(a), a third-degree felony.
 Grand theft (five counts)  $300 or more, section 812.014(2)(c)(1), a third-degree felony.
B. The Plea Agreement
On August 4, 2005, more than two years after her arrest, Ms. Armas made a plea agreement with the State. Under the agreement, the State undertook to nolle pros the scheme to defraud charge (a first-degree felony) and all of the remaining third-degree felony charges. In return, Ms. Armas agreed to plead nolo contendere to the first-degree felony charge for criminal use of personal identification information $50,000 or more. In addition, Ms. Armas reserved her right to appeal specific rulings that the trial court had made against her on questions of law.[2] Although these issues are more fully discussed below, the core of the parties' dispute was (1) whether the State could aggregate the dollar amounts of the offenses to reach the $50,000 threshold level for count one, (2) whether Ms. Armas' series of crimes constituted a continuing offense, and (3) if it was a continuing offense, whether the 2002 or 2003 version of the statutes should apply.[3] This third question *678 arose because section 817.568(2)(c), Florida Statutes (2003), the statute to which Ms. Armas pleaded nolo contendere, went into effect on July 1, 2003, midway through her series of fraudulent transactions.
C. The Strategies
In making the plea agreement that allowed Ms. Armas to reserve her right to appeal, each side was motivated by a specific strategy and an expected sentencing outcome. The State's declared strategy was to combine the value of the underlying fourteen illegal transactions and obtain a single first-degree felony conviction that carried a statutorily defined five-year minimum sentence. The State was convinced that the provisions of the 2003 statute authorized the aggregation of the value of the underlying illegal transactions involving individuals:
(c) Any person who willfully and without authorization fraudulently uses personal identification information concerning an individual without first obtaining that individual's consent commits a felony of the first degree, . . . if the pecuniary benefit, the value of the services received, the payment sought to be avoided, or the amount of the injury or fraud perpetrated is $50,000 or more or if the person fraudulently uses the personal identification information of 20 or more individuals without their consent.
§ 817.568(2)(c), Fla. Stat. (2003) (emphasis added).
Ms. Armas' declared strategy in pleading to the first-degree felony was to avoid a trial and to ensure that her maximum sentence would be five years in prison. Unlike the State, Ms. Armas believed that the 2002 version of the statute applied to her offense. Under the 2002 version, criminal use of personal identification is a third-degree felony. § 817.568(2)(a), Fla. Stat. (2002). Only where the amount of the injury or fraud perpetrated is $75,000 or more does the level of the offense rise to a second-degree felony. § 817.568(2)(b), Fla. Stat. (2002). For this reason, Ms. Armas maintained that she was guilty of only a third-degree felony, not a first-degree felony. By pleading with a reservation of her right to appeal, Ms. Armas could begin serving her first-degree felony sentence in the hope of a favorable appellate ruling that might result in the reduction of the length of the prison term she would have to serve.[4]
D. The Stipulation and Agreed-Upon Outcome
Florida Rule of Appellate Procedure 9.140(b)(2)(A)(i) requires that "[a] defendant who pleads . . . nolo contendere may expressly reserve the right to appeal a prior dispositive order of the lower tribunal, identifying with particularity the point of law being reserved." (Emphasis added.) For its part, the State stipulated at Ms. Armas' plea hearing that the legal questions of aggregation and continuing offense were dispositive.[5] Therefore, Ms. *679 Armas was not required to move to withdraw her plea in order to challenge her conviction and sentence.
In this case, the State and the defense agreed that Ms. Armas' conviction for a first-degree felony would stand if she lost on appeal and that Ms. Armas' conviction would be reduced to a third-degree felony under the 2002 statute if this court reversed the trial court's rulings on aggregation and continuing offense. Moreover, the trial court accepted the plea agreement, approved the stipulations, and sentenced Ms. Armas to five years in state prison for the first-degree felony based upon this understanding.

III. DISCUSSION
A. The Changing Statute
From July 1, 2001, through June 30, 2003, Florida's "Criminal use of personal identification information" statute provided that the unlawful use of any such information concerning an individual was a third-degree felony. When the amount involved exceeded $75,000, the level of the offense rose to a second-degree felony.
(2)(a) Any person who willfully and without authorization fraudulently uses, or possesses with intent to fraudulently use, personal identification information concerning an individual without first obtaining that individual's consent, commits the offense of fraudulent use of personal identification information, which is a felony of the third degree. . . .
(b) Any person who willfully and without authorization fraudulently uses personal identification information concerning an individual without first obtaining that individual's consent commits a felony of the second degree, . . . if the pecuniary benefit, the value of the services received, the payment sought to be avoided, or the amount of the injury or fraud perpetrated is $75,000 or more.

§ 817.568(2)(a)-(b), Fla. Stat. (2002) (emphasis added).
Effective July 1, 2003, the legislature reduced the dollar-value threshold for a second-degree felony to $5000, and it added a first-degree felony subsection with a threshold level of $50,000. § 817.568(2)(b)-(c), Fla. Stat. (2003). In addition, the legislature added a second factor that increases the felony level based on the number of victims. Id. In the new statute, when the individual victims number ten or more, regardless of the dollar amount involved, the offense constitutes a second-degree felony. Id. Likewise, when the individual victims number twenty or more, the offense constitutes a first-degree felony. Id.
(b) Any person who willfully and without authorization fraudulently uses personal identification information concerning an individual without first obtaining that individual's consent commits a felony of the second degree, . . . if the pecuniary benefit, the value of the services received, the payment sought to be avoided, or the amount of the injury or fraud perpetrated is $5,000 or more or if the person fraudulently uses the personal identification information of 10 or more individuals without their consent.

(c) Any person who willfully and without authorization fraudulently uses personal *680 identification information concerning an individual without first obtaining that individual's consent commits a felony of the first degree, . . . if the pecuniary benefit, the value of the services received, the payment sought to be avoided, or the amount of the injury or fraud perpetrated is $50,000 or more or if the person fraudulently uses the personal identification information of 20 or more individuals without their consent.

§ 817.568(2)(b)-(c), Fla. Stat. (2003) (emphasis added).
B. The Parties' Arguments
Ms. Armas argues that the plain language of the statute contains no provision that allows the State to aggregate the dollar amounts taken from individual victims to reach the $50,000 threshold. She argues that if the legislature wanted to allow aggregation, it could have used language similar to that used in the statutes which criminalize a scheme to defraud as part of the Florida Communications Fraud Act.[6] Ms. Armas argues that when the legislature amended the criminal use of personal identification information statute effective July 1, 2003, instead of specifically including language that allows for aggregation of dollar amounts to reach the dollar value threshold, the legislature chose to add an entirely separate factor based on the number of victims. Further, she notes that the legislature chose to retain the specific references to personal identification information concerning "an individual."[7] Based on these facts, she argues that the $50,000 value is a separate and distinct threshold that applies only to the injury or fraud perpetrated against a single individual and not to the new multiple-victim factor.
The State concedes that the new statute does not specifically authorize aggregating dollar amounts. It asserts, however, that when the legislature provided for multiple victims in the 2003 version, it demonstrated a legislative intent to allow aggregation. According to the State, Ms. Armas admitted to fraudulently cashing checks totaling over $50,000, which is a first-degree felony under the 2003 statute.
C. Statutory Construction
We cannot agree with the State's argument in support of convicting Ms. Armas of a first-degree felony under the 2003 statute. Although the 2003 revision authorized aggregating the number of individual victims, it did not specifically allow for the aggregation of the dollar amounts involved among those multiple victims. Because the statute as written is susceptible to differing constructions, we must construe the statute in favor of the accused under the rule of lenity. § 775.021(1), Fla. Stat. (2002). Therefore, we are constrained to conclude that the $50,000 threshold can be applied only to the fraudulent use of a *681 single individual's information and that using the personal information of twenty or more victims is a separate and discrete factor that also defines a first-degree felony.
D. Continuing Offense
As noted above, Ms. Armas properly reserved for appeal the issues of whether her series of crimes constituted a continuing offense and, if so, whether the 2002 or 2003 statute should apply. We need not consider these questions, however, because prohibiting the State from aggregating dollar amounts renders the issue of continuing offense moot. The evidence in the record does not reveal any offense, whether isolated or continuing, against any individual victim at or above the $50,000 threshold. Thus, the continuing offense concept does not provide a means to upgrade the level of Ms. Armas' offense to a first-degree felony.

IV. CONCLUSION
Because none of Ms. Armas' separate offenses against any individual was $50,000 or more and because the victims included only eight individuals, we find that there was no factual basis for her plea to the first-degree felony under the 2003 statute.[8] Thus the trial court erred in accepting the plea. Instead, under the parties' express agreement and stipulation at sentencing, Ms. Armas' offense constituted a third-degree felony under the 2002 statute.
Accordingly, we reverse Ms. Armas' first-degree felony conviction under section 817.568(2)(c), Florida Statutes (2003). In accordance with the plea agreement negotiated below, we remand this case to the trial court for the entry of a corrected third-degree felony conviction under section 817.568(2)(a), Florida Statutes (2002). The trial court is hereby instructed to resentence Ms. Armas as appropriate under the earlier version of the statute.
Before closing, we pause to emphasize that our disposition of this case is largely driven by the agreement of the parties that was approved by the trial court. The parties' agreement is both unusual and irregular. Accordingly, the scope of our holding is necessarily limited by the peculiar circumstances of the proceedings below.
Reversed and remanded with instructions.
FULMER, C.J., and WHATLEY, J., Concur.
NOTES
[1] The trial court dismissed some of the charges because it found that the State had charged a single offense twice when a forged check contained two account holder names (e.g., husband and wife) for a jointly-held account.
[2] The reservation of the right to appeal was made in accordance with Florida Rule of Appellate Procedure 9.140(b)(2)(A)(i).
[3] Ms. Armas also raises the issue of whether two $9000 cashier's checks that she allegedly obtained but never negotiated could be included in the aggregation and applied toward the $50,000 threshold. Because, however, we conclude that aggregation of dollar amounts obtained from different individual victims is not allowable under the statute, we need not address this question.
[4] Counsel for Ms. Armas specifically stated the expectation that her client would "be subject to sentencing under the guidelines with the minimum of 21 months" if the earlier statute for a third-degree felony applied.
[5] Normally, "[a]n issue is dispositive only if, regardless of whether the appellate court affirms or reverses the lower court's decision, there will be no trial of the case." Morgan v. State, 486 So.2d 1356, 1357 (Fla. 1st DCA 1986). In this case, however, if this court were to vacate Ms. Armas' plea agreement and allow her leave to withdraw her plea, the State retains at least twenty-four other felony charges against Ms. Armas. See id. at 1359 n. 3. A trial on these charges could result in multiple guilty verdicts with the potential for significantly more prison time than the agreed upon five-year sentence. Arguably, therefore, the issues on appeal are not dispositive of Ms. Armas' entire case. Nonetheless, we treat them as dispositive because both sides have stipulated that they are dispositive of which statute and which sentence should be applied.
[6] The scheme to defraud statutes allow aggregation under the following subsections:

3. Amounts of value of separate properties obtained in one scheme to defraud, whether from the same person or from several persons, shall be aggregated in determining the grade of the offense under paragraph (4)(a).
(4)(a) Any person who engages in a scheme to defraud and obtains property thereby is guilty of organized fraud, punishable as follows:
1. If the amount of property obtained has an aggregate value of $50,000 or more, the violator is guilty of a felony of the first degree. . . .
§ 817.034(3)(e)(3)(4)(a)(1), Fla. Stat. (2003) (emphasis added).
[7] In both the 2002 and 2003 versions of this statute, an individual is specifically defined as "a single human being and does not mean a firm, association of individuals, corporation, partnership, joint venture, sole proprietorship, or any other entity." § 817.568(1)(d).
[8] We note that subsection (b) of the 2003 statute provides a $5000 threshold, and a number of the fraudulent checks cashed after July 1, 2003, exceeded this amount. § 817.568(2)(b). Arguably, therefore, there may have been a factual basis for a second-degree felony conviction. However, neither party argued this option to the trial court. They also failed to include it in the plea agreement and stipulations. Based on the agreement made by the parties, resentencing Ms. Armas for a second-degree felony is not an option on remand.